Mark R. Thierman NV# 8285
Tammy Martinelli NV#10398
**THIERMAN LAW FIRM**
7287 Lakeside Drive
Reno, Nevada 89511
Tel: (775) 284-1500

Travis W. Gerber NV#8083
**GERBER LAW OFFICES, LLP**
491 4th Street
Elko, Nevada 89801
(775) 738-9258 office
(775) 738-8198 fax

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

### (Northern Division-Reno)

| | |
|---|---|
| KURT KNUDSEN, DONALD CAPP, LARRY MOON, STEVE VOLKERT, and PAUL DYER on behalf of themselves, and all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>QUEENSTAKE RESOURCES U.S.A. INC, YUKON-NEVADA GOLD CORP, collectively aka Yukon-Nevada/Queenstake USA, Robert F. Baldock, Graham Dickson, and Shaun Heinrichs,<br><br>        Defendants. | Case No.:<br><br>Complaint for Violation Federal Warn Act, 29 U.S.C. §2101 et seq, Employment Retirement Income Security Act, 29 U.S.C.§1001 et seq., and NRS 608.050, 608.150 et seq, and to foreclose liens pursuant to NRS 108.221 to 108.246, inclusive. |

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

Now Comes KURT KNUDSEN, DONALD CAPP, LARRY MOON, STEVE VOLKERT, and PAUL DYER on behalf of themselves, and all others similarly situated, and allege:

## JURISDICTION

1.      This Court has original jurisdiction over the claims alleged herein against the corporate defendants pursuant to the federal Worker Adjustment and Retraining Notification (WARN) Act, 29 U.S.C. §2104(a)(5), which states: "A person seeking to enforce such liability, including a representative of employees or a unit of local government aggrieved under paragraph (1) or (3), may sue either for such person or for other persons similarly situated, or both, in any district court of the United States for any district in which the violation is alleged to have occurred, or in which the employer transacts business."

2.      This Court also has jurisdiction over the claims alleged herein against all defendants pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §1132, for failure to make contributions to various employee benefit plans such as the medical and pension plans, despite withholding the contributions from wages of the employees in breach of fiduciary duties imposed by law.

3.      This Court has original jurisdiction over all other claims and causes of action alleged herein pursuant to the Class Action Fairness Act, 29 U.S.C. §1332(d), the claims in aggregate total more than 5 million dollars and the defendants are foreign corporations and/or citizens and residents of locations outside the state of Nevada, whereas the majority of the class

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

members, as well as the named Plaintiffs herein, are residents and citizens of the state of Nevada.

4.      Venue is proper in this Court as the claims arose in and around the city of Elko and/or within the geographical jurisdiction of this Court.

## PARTIES

5.      At all relevant times, Plaintiffs KURT KNUDSEN, DONALD CAPP, LARRY MOON, STEVE VOLKERT, and PAUL DYER were and are employees of corporate defendants herein working and residing within the state of Nevada, in and around the county of Elko.

6.      At all relevant times herein, corporate defendants QUEENSTAKE RESOURCES U.S.A. INC, YUKON-NEVADA GOLD CORP, collectively also known as "Yukon-Nevada/Queenstake USA" and hereinafter also referred to collectively as "Corporate Defendants," were and are foreign corporations with their principal place of business not within the state of Nevada, engaged in the occupation of prospecting, mining and refining of precious minerals.   Most notably, Corporate Defendants own and operate the Jerritt Canyon, SSX and Smith gold mines about 50 miles north of Elko in Elko County, Nevada, including but not limited to Elko County Assessor parcel numbers OPM-097-023, OPM-097-024, OPM-097-025, OPM-201-118, OPM-201-119, OPM-201-120, OPM-201-121, OPM-201-122, 005-160-006, 005-340-009, 005-570-004, 005-570-005, 005-570-007, 005-580-002, 005-580-012, and 006-150-001.

7. At all relevant times herein, Defendant Robert F. Baldock is or was President and Chief Executive Officer of the Corporate Defendants, who personally authorized, ordered, ratified and/or condoned all the actions complained of herein and who failed to exercise his fiduciary responsibility to report other fiduciaries who breached their duties in respect to payment of contributions to various employee benefit plans.

8. At all relevant times herein, Defendant Graham Dickson is or was the President and Chief Executive Officer of the Corporate Defendants, who personally authorized, ordered, ratified and/or condoned all the actions complained of herein, as can be seen from the email attached hereto as Exhibit A, and who failed to exercise his fiduciary responsibility to report other fiduciaries who breached their duties in respect to payment of contributions to various employee benefit plans.

9. At all relevant times herein, Defendant Shaun Heinrichs is or was the Chief Financial Officer of the Corporate Defendants, who personally authorized, ordered, ratified and/or condoned all the actions complained of herein and who failed to exercise his fiduciary responsibility to report other fiduciaries who breached their duties in respect to payment of contributions to various employee benefit plans.

## COMMON FACTS

10. Plaintiffs incorporate by reference each and every allegation above as if fully set forth herein.

11. Attached as Exhibit B is the Notice of Mass Layoffs dated August 8, 2008 that was given to all the workers on or before August 8, 2008, before the commencement of work.

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

12.     Despite the fact expressed in the letter that layoffs would begin on August 12, 2008, on or about August 8, 2008, Defendants permanently terminated approximately 400 of its employees employed at all the above-mentioned Queenstake gold mines in Elko County without any advance notice.

13.     Attached as Exhibit C is a letter dated August 8, 2008 from Defendants to "All current and laid off Jerritt employees" stating that Queenstake still has its health insurance plan in place (administered by CNIC). "There are no changes in coverage procedures.  COBRA is available. . . ."

14.     Despite these assurances, Defendants stopped paying premiums to the medical insurance carrier prior to this date, and neither Defendants nor its medical plan paid any claims, including claims for those that enrolled in COBRA and paid the premium for extended coverage.

15.     Defendants paid the workers 30 days, which is only one-half of the severance that was due under the WARN act at the time of the layoff.

16.     Defendants then promised to pay the remaining severance but have since failed to pay.  See, Exhibit A attached hereto.

17.     Defendants also failed to pay those who found subsequent employment with another employer contrary to the provisions of law.

18.     Defendants failed to pay the WARN Act 60 days of pay as a lump sum at the beginning of the period for which no notice was given as required by law.

19.     Defendants failed to pay workers for all hours worked in their final week.

20.     Defendants have also failed to pay millions of dollars in medical benefits for treatment that workers incurred prior to the layoffs and has failed to remit payments to the

medical and 401K pension plans, which payments were previously withheld from employees' paychecks as voluntary contributions into these ERISA plans.

## CLASS ACTION ALLEGATIONS

21.     The class is defined as all full- and part-time employees who were terminated from employment by Defendants on or about August 8, 2008 or within 30 days thereafter or before.

22.     The Plaintiff class consists of three subclasses based upon the nature of the damages suffered.   Membership in each subclass is not unique or mutually exclusive of membership in any other subclass.   The three subclasses are the WARN Act subclass, the ERISA claims subclass, and the unpaid wages subclass.

23.     The WARN Act subclass are full- and part-time employees who were terminated from employment by Defendants at one or more of its Elko, Nevada, locations on or about August 8, 2008 or within 30 days before or after that date.

24.     Upon information and belief, there are more than four hundred members of the WARN Act subclass and the WARN Act subclass is so numerous that joinder is impractical.

25.     There is a well-defined community of interest in the questions of law and fact affecting the WARN Act subclass that the named Plaintiffs represent as a whole.

26.     Common questions of law and fact apply to all WARN Act subclass members as stated herein, and a class action is superior to individual forms of action.

27.     The representative Plaintiffs will fairly and adequately represent the interests of the WARN Act subclass and have claims that are typical of those in the class.

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

28.     The ERISA claims subclass consists of all participants and/or beneficiaries of the Defendants' employee ERISA medical benefit(s) (including Dental and Vision benefits) plans and Defendants' 401K and/or other pension plans, and/or any other "employee welfare benefit plan" and "welfare plan" as that term is defined 29 U.S.C. §1002(1) and/or any other "employee pension benefit plan" and "pension plan" as that term is defined 29 U.S.C. §1002(2) maintained or administered by Defendants, or any of them, for the employees employed at the above-referenced Elko, Nevada, locations who had money withheld from their wages for the purposes of funding the above-described employer-sponsored ERISA benefit plan(s), which money was never transmitted to the plan(s) to pay premiums or claims, these funds being converted to Defendants' own use and/or the use of one or more businesses controlled by Defendants, and resulting in the denial of coverage and/ or credit for participants and beneficiaries of such plan(s).

29.     Upon information and belief, there are more than one hundred members of the ERISA claims subclass and the ERISA claims subclass is so numerous that joinder is impractical.

30.     There is a well-defined community of interest in the questions of law and fact affecting the ERISA claims subclass that the named Plaintiffs represent as a whole.

31.     Common questions of law and fact apply to all ERISA claims subclass members as stated herein, and a class action is superior to individual forms of action.

32.     The representative Plaintiffs will fairly and adequately represent the interests of the ERISA claims subclass and have claims that are typical of those in the class.

33. The unpaid wages subclass consists of all employees of Defendants who were terminated within the last four years who did not receive all their wages owed at the time of termination.

34. Upon information and belief, there are more than one hundred members of the unpaid wages subclass and the unpaid wages subclass is so numerous that joinder is impractical.

35. There is a well-defined community of interest in the questions of law and fact affecting the unpaid wages subclass that the named Plaintiffs represent as a whole.

36. Common questions of law and fact apply to all unpaid wages subclass members as stated herein, and a class action is superior to individual forms of action.

37. The representative Plaintiffs will fairly and adequately represent the interests of the unpaid wages subclass, and have claims that are typical of those in the class.

## FIRST CAUSE OF ACTION AGAINST CORPORATE DEFENDANTS
### (Breach of Contract And Violation Of Federal WARN Act)

38. Plaintiffs incorporate by reference each and every allegation above as if fully set forth herein.

39. The federal Worker Adjustment and Retraining Notification Act (29 U.S.C. §2101 et seq., hereafter also referred to as the "WARN Act") provides protection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs. Advance notice provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skilled training or retraining that will allow these

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

1   workers to successfully compete in the job market.  WARN also provides for notice to State

2   dislocated worker units so that dislocated worker assistance can be promptly provided.

3   40.    Each Defendant is and was an employer under 29 U.S.C. § 2101(a), which

4   defines an employer for purposes of the federal WARN Act as any business enterprise that

5   employs either (A) 100 or more employees, excluding part-time employees; or (b) 100 or more

6   employees who in the aggregate work at least 4,000 hours per week (exclusive of hours

7   overtime).

8   41.    The termination of Defendants' employees in August 2008 constitutes a "plant

9   closing" because there was a permanent or temporary shutdown of several geographically

10  distinct single sites of employment, facilities or operating units which resulted in an

11  employment loss at the single site of employment during the appropriate 30-day period for 50 or

12  more employees, excluding any part-time employees.

13  42.    In the alternative, the termination of Defendants' employees in August 2008

14  would constitute a "mass layoff" because it was a reduction in force which (A) is not the result

15  of a plant closing; and (B) results in an employment loss at the single site of employment during

16  the relevant 30-day period for (I) at least 33 percent of the employees (excluding any part-time

17  employees); and (II) at least 50 employees (excluding any part-time employees); or (II) at least

18  500 employees (excluding any part-time employees).

19  43.    In the case of either a plant closing or a mass layoff, Defendants were obligated

20  to provide at least 60 days' advance notice or, in the alternative, 60 days of pay, which

21  Defendants did not do.

22  44.    At the time of the termination and repeatedly since, Defendants, and each of

23  them have promised to pay within two months of the date of termination, or date of last promise

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

by Defendants, the aforesaid sixty days of pay to each and every member of the Plaintiff class and all subclasses, regardless of any legal obligation to do so, in exchange for Plaintiffs and members of Plaintiffs class promises, expressed and implied, and action in furtherance of such promise, of forbearing to file a lawsuit to collect this pay due and owing.  Such promises supported by the consideration of not filing suit, constitutes a contract, partially in writing and partially oral, affirmed and ratified repeatedly by Defendants, which Defendants have breached repeatedly.

45.     As a direct, proximate result of the failure of Defendants to follow their obligations under both their contract and the federal WARN Act, Plaintiff and each class member has been damaged in the sum of 60 days of pay, less any wages or severance pay that they may have received.

46.     Such sums constitute wages owed.

47.     Wherefore, Plaintiffs pray for compensatory damages according to proof, representing the 60 days of pay owed to Plaintiffs and Plaintiff class members plus interest at the statutory for breach of the promises to pay sixty days of pay, and/or for violation of the federal WARN Act.

## SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (Breach of Fiduciary Duty Under ERISA)

48.     Plaintiffs incorporate by reference each and every allegation above as if fully set forth herein.

49.     At all times relevant herein, Defendants, and each of them, were persons who

were "acting directly or indirectly in the interest of an employer in relation to an employee." In addition, Defendants, or some of them, exercised day-to-day control over the employees of the Jerritt Canyon, SSX and Smith gold mines and controlled wages, hours and terms and conditions of employment.

50.     Therefore, Defendants, and each of them, were an employer as that term is defined by ERISA, 29 U.S.C. §1002(5), a plan sponsor of the medical benefit plan(s) at issue as that term is defined at 29 U.S.C. § 1002(16)(B), and a party in interest as that term is defined by 29 U.S.C. §1002(14).

51.     As plan sponsor, Defendants became the administrator *de jure* and *de facto* when Yukon-Nevada/Queenstake USA was no longer identified as the plan administrator for the plan(s) at issue.

52.     Defendants exercised discretionary authority or discretionary control respecting management of such plan(s) and exercised authority or control respecting management or disposition of their assets, and had discretionary authority or discretionary responsibility in the administration of such plan(s).

53.     Therefore, Defendants, and each of them, were fiduciaries of the medical benefit plan(s) as that term is defined at 29 U.S.C. §1002(21)(A).

54.     At 29 C.F. R. §2510.3-102, Definition of "plan assets" -- participant contributions, it is stated: "(a) General rule. For purposes of subtitle A and parts 1 and 4 of subtitle B of title I of ERISA and section 4975 of the Internal Revenue Code only (but without any implication for and may not be relied upon to bar criminal prosecutions under 18 U.S.C. 664), the assets of the plan include amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

an employer, for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets."

55.     Even a financially distressed employer has the fiduciary responsibility to make contributions due to a plan because ERISA makes no exceptions based on the financial condition of the plan sponsor.

56.     At 29 U.S.C § 1104, ERISA defines the standard of care for fiduciaries with respect to any ERISA plan and states: "A fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and -- (A) for the exclusive purpose of:  (I) providing benefits to participants and their beneficiaries; and (II) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV of ERISA."

57.     At 29 U.S.C. § 1105, ERISA sets forth the liability of a fiduciary for breaches of a co-fiduciary and states: "A fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:  (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 404(a)(1) [29 USCS § 1104(a)(1)] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

58.     At 29 U.S.C. § 1106, ERISA defines prohibited transactions with respect to a plan and a party in interest and with respect to a plan and a fiduciary.

59.     At all times relevant herein, Defendants had the power on behalf of Yukon-Nevada/Queenstake USA to borrow money and/or take funds in the possession of the Jerritt Canyon, SSX and Smith gold mines to make the required contributions to the ERISA medical plan(s) at issue and to pay for the administration of such plan(s), but failed to do so.

60.     At 29 U.S.C § 1109(a), it is stated, in part, that: "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

61.     At 29 CFR 2510.3-102(c), it is stated that ERISA requires all employee medical payment contributions to be transmitted to their designated medical plan within 90 days.

62.     Upon information and belief, Defendants did not timely transmit to the medical plan(s) at issue all monies taken out of the Plaintiffs' paychecks.

63.     Through the acts and omissions described above, Defendants have breached their aforesaid fiduciary duties under ERISA and are subject to liability for the damages caused to Plaintiffs as a result of such breach.

64.     Wherefore, Plaintiffs pray for an award of restitution, injunctive relief and

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

damages against Defendants, and each of them, including but not limited to the repayment to Plaintiffs of all monies withheld from Plaintiffs' paychecks and not transmitted to the ERISA medical, 401K pension and other employee welfare benefit and pension plan(s) at issue in a timely manner, and payment by Defendants of all other damages, including the expenses that should have been covered by the ERISA medical plan(s) at issue but were not and which expenses Plaintiffs had to pay or which were otherwise incurred by Plaintiffs, along with an award of attorneys' fees, interest, and costs.

## THIRD CAUSE OF ACTION AGAINST CORPORATE DEFENDANTS

### (State Law Claims for Unpaid Wages and Intent To File Action To Foreclose Lien)

65.    Plaintiffs incorporate by reference each and every allegation above as if fully set forth herein against all defendants.

66.    At the time of discharge from termination, Defendants owed wages to the members of the unpaid wages subclass.

67.    NRS 608.020 – "Discharge of employee:   immediate payment" - states that: "Whenever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

68.    NRS 608.040(1)(a), "Penalty for failure to pay discharged or quitting employee" - states:  "If an employer fails to pay:  Within 3 days after the wages or compensation of a discharged employee becomes due; the wages or compensation of the employee continues at the same rate from the day he resigned, quit or was discharged until paid or for 30 days, whichever is less."

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

69.     NRS 608.050 – "Wages to be paid at termination of service: Penalty; employee's lien" - specifically provides for a private right of action by employees directly against the employer and against the property where they were employed to recover wages owed at termination.

70.     NRS 608.050 – "Wages to be paid at termination of service: Penalty; employee's lien" - states: "1. Whenever an employer of labor shall discharge or lay off his or its employees without first paying them the amount of any wages or salary then due them, in cash and lawful money of the United States, or its equivalent, or shall fail, or refuse on demand, to pay them in like money, or its equivalent, the amount of any wages or salary at the time the same becomes due and owing to them under their contract of employment, whether employed by the hour, day, week or month, each of his or its employees may charge and collect wages in the sum agreed upon in the contract of employment for each day his employer is in default, until he is paid in full, without rendering any service therefor; but he shall cease to draw such wages or salary 30 days after such default. 2. Every employee shall have a lien as provided in NRS 108.221 to 108.246, inclusive, and all other rights and remedies for the protection and enforcement of such salary or wages as he would have been entitled to had he rendered services therefor in the manner as last employed."

71.     NRS 108.2214 – "'Lien claimant' defined" - states that a lien claimant includes "any miner" and any express trust fund such as Defendants' 401K pension plan and medical plans.  NRS 108.2214 states: "1. "Lien claimant" means any person who provides work, material or equipment with a value of $500 or more to be used in or for the construction, alteration or repair of any improvement, property or work of improvement. The term includes, without limitation, every artisan, builder, contractor, laborer, lessor or renter of equipment,

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

materialman, miner, subcontractor or other person who provides work, material or equipment, and any person who performs services as an architect, engineer, land surveyor or geologist, in relation to the improvement, property or work of improvement. 2. As used in this section, "laborer" includes, without limitation, an express trust fund to which any portion of the total compensation of a laborer, including, without limitation, any fringe benefit, must be paid pursuant to an agreement with that laborer or the collective bargaining agent of that laborer."

72. Plaintiffs have, and/or will, file a lien against all the property of Defendants locked within the state of Nevada, including the parcels located in Elko County described above, in the amount of a good faith estimate for wages and trust fund contributions due Plaintiff class and all members of all three subclasses described hereinabove, and intends to file a lawsuit in a Court of competent jurisdiction to foreclose said lien as soon as permitted by statute.

73. Pursuant to F.R.Civ.P. Rule 64, this Court is a court of competent jurisdiction to foreclose said lien as soon as permitted by statute.

74. The lien is timely pursuant to NRS 108.226(1)(a)(2) because the work is still continuing, the work is not complete and no valid notice of completion has been filed.

75. NRS 108.238 – " Right to maintain civil action or submit controversy to arbitration not impaired" – states" "The provisions of NRS 108.221 to 108.246, inclusive, must not be construed to impair or affect the right of a lien claimant to whom any debt may be due for work, materials or equipment furnished to maintain a civil action to recover that debt against the person liable therefor or to submit any controversy arising under a contract to arbitration to recover that amount."

76. Upon information and belief there is no arbitration clause applicable to these claims, and exhaustion of any exhaustion of any claims procedures contained within any employee welfare benefit or pension plan is excused as futile in light of the claims for breach of fiduciary duty against defendants herein. The entire debt due is for work furnished Defendants to work the mine on the above-referenced properties in Elko County.

77. NRS 608.140 - "Assessment of attorney's fees in action for recovery of wages" - also creates a private cause of action against any employer who fails to pay wages due, as it states: "Whenever a mechanic, artisan, miner, laborer, servant or employee shall have cause to bring suit for wages earned and due according to the terms of his employment, and shall establish by decision of the court or verdict of the jury that the amount for which he has brought suit is justly due, and that a demand has been made, in writing, at least 5 days before suit was brought, for a sum not to exceed the amount so found due, the court before which the case shall be tried shall allow to the plaintiff a reasonable attorney fee, in addition to the amount found due for wages and penalties, to be taxed as costs of suit."

78. Wherefore, Plaintiffs pray for an award of damages against Defendants, including but not limited to the all money owed by Defendants for unpaid wages to the members of the unpaid wages subclass, including any and all amounts due, without limitation, to any express trust fund to which any portion of the total compensation of a laborer, including, without limitation, any fringe benefit, must be paid pursuant to an agreement with that laborer or the collective bargaining agent of that laborer and Defendants, and 30 days of waiting wages as provided by law.

79. Wherefore, Plaintiffs pray for a declaration that the United States District Court for the District of Nevada, Northern Division, Reno Courthouse, is a Court of competent

jurisdiction pursuant to Federal Rules of Civil Procedure Rule 65 to foreclose and enforce any lien which may be filed by Plaintiffs against the property owned by Defendants or any of them, and located within Elko County for any and all sums claimed herein, and if so, to foreclose such lien as may be properly filed according to the laws of the state of Nevada to the extent applicable to a federal district court under F.R.Civ.P. Rule 65(a).

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them according to proof, as follows:

1.  For compensatory damages according to proof, representing the 60 days of pay owed to Plaintiffs and Plaintiff class members plus interest at the statutory for breach of the promises to pay sixty days of pay, and/or for violation of the federal WARN Act;

2.  For an award of restitution, injunctive relief and damages against Defendants, and each of them, including but not limited to the repayment to Plaintiffs of all monies withheld from Plaintiffs' paychecks and not transmitted to the ERISA medical, 401K pension and other employee welfare benefit and pension plan(s) at issue in a timely manner, and payment by Defendants of all other damages, including the expenses that should have been covered by the ERISA medical plan(s) at issue but were not and which expenses Plaintiffs had to pay or which were otherwise incurred by Plaintiffs, along with an award of attorneys' fees, interest, and costs;

3.  For an award of damages against Defendants, including but not limited to all money owed by Defendants for unpaid wages to the members of the unpaid wages subclass; and 30 days of waiting wages as provided by law

4.  For any and all amounts due, without limitation, to any express trust fund to which any portion of the total compensation of a member of any of the

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

subclasses herein, including, without limitation, any fringe benefit, must be paid pursuant to any agreement with Defendants, including any agreement by the employee consenting to the deduction of wages from a paycheck for a specified purpose, if that payment was not remitted to the third party provider or entity to whom the payment was intended;

5.   For a declaration that the United States District Court for the District of Nevada, Northern Division, Reno Courthouse, is a Court of competent jurisdiction that pursuant to Federal Rules of Civil Procedure Rule 65 to foreclose and enforce any lien which may be filed by Plaintiffs against the property owned by Defendants or any of them, and located within Elko County for any and all sums claimed herein, and if so, to foreclose such lien as may be properly filed according to the laws of the state of Nevada to the extent applicable to a federal district court under F.R.Civ.P. Rule 65(a).

6.   For reasonable attorneys' fees and costs of the suit herein;

7.   For such other relief as the Court deems just and proper.

Dated this 17 day of July, 2009.

**THIERMAN LAW FIRM**

By:_____/s/Mark R. Thierman_____
       Mark R. Thierman Cal SB# 72913
       **THIERMAN LAW FIRM**
       7287 Lakeside Drive
       Reno, Nevada 89511
       Tel: (775) 284-1500

**GERBER LAW OFFICES, LLP**

By:_____/s/Travis W. Gerber_____
       Travis W. Gerber NV#8083
       **GERBER LAW OFFICES, LLP**
       491 4th Street
       Elko, Nevada 89801
       (775) 738-9258 office
       (775) 738-8198 fax

Exhibit A

Todd, Robert (Chip)

From:          Dyer, Paul
Sent:          Thursday, August 14, 2008 1:09 PM
To:            Todd, Robert (Chip)   ·
Subject:       FW: Severance and Payroll        ·


From: Graham Dickson [mailto:graham@yngc.ca]
Sent: Thursday, August 14, 2008 1:05 PM
To: Dyer, Paul
Cc: Chris Oxner; Dave Drips ·
Subject: Severance and Payroll

Paul

I'm instructing you not to pay lump sum amounts to our employees of 60 days severance. Under the WARN act we are allowed to pay the employees on a regular basis for the next 60 days after they have been let go without WARN notification. To fulfil our obligations we need to pay them at regular payroll time for standard hours of employment. This is how I want it done. If it is done in any other way I am letting you know you will not have fulfilled your fiduciary obligations to the Company.

Employees who have already received another job are no longer covered by the WARN act from the time they accepted the next job offer. These people are not entitled to be paid for any time after they started their next job. Please take this into consideration when planning your payroll run. If you pay people monies they are not entitled to there will of necessity be problems.

That is the way I want to do it. We will meet our all of our statutory obligations.

Graham

1

Exhibit B

# NOTICE OF MASS LAYOFFS

## YOU WILL PLEASE TAKE NOTICE AS FOLLOWS:

(1) Mass layoffs of employees of Queenstake Resources USA, Inc. will occur at the SSX and Smith Mines located approximately 50 miles north of Elko, Nevada. The employment site address is HC 31, Box 78, Elko, Nevada 89801. The name and telephone number of the company official to contact for further information is: Robert Todd, General Manager, telephone: (775) 738-5006.

(2) The mass layoff of the underground workers at the SSX and Smith Mines is believed to be permanent; however, the entire mine sites are not being closed.

(3) The expected date of the first separation is 12:00 AM (Midnight), Tuesday, August 12, 2008.   Future separation dates for other employees are not set at this time.

(4) The job titles of positions affected and the number affected in each classification is as follows:

    (a) Underground Miners: 118
    (b) Underground Maintenance: 40

(5) Employment bumping rights do not exist.

(6) Queenstake will compensate the separated employees at their regular salary rates for the first sixty (60) days from the date of separation.

Queenstake Resources apologizes for the sudden notice of mass layoffs; however, after lengthy negotiations, new financing did not materialize.

Dated this 8th day of August, 2008.

Queenstake Resources USA, Inc.

By: _____ Robert Todd

Title: _General Manager_

Exhibit C

 **Queenstake Resources USA, Inc.**
Jerritt Canyon Mine

August 8, 2008

To: All current and laid off Jerritt employees

Re: Health Insurance

Queenstake Resources still has the health insurance plan in place. There are no changes to coverage or procedures

COBRA is available to those who have been laid off and do not have insurance through a new employer. The enrollment forms will be mailed directly to your home.

The flex plan continues as normal. Submit claims as you have in the past.

Regards,

Paul Dyer   – Resigned
Administrative Manager