1

Mark R. Thierman, NSB 8285
THIERMAN LAW FIRM

2

7287 Lakeside Drive
Reno, NV 89511

3

Tel: (775) 284-1500
Fax: (775) 703-5027

4

Email: laborlawyer@pacbell.net

5

Travis W. Gerber, NSB 8083
GERBER LAW OFFICES, LLP

6

491 4th Street

7

Elko, NV  89801
Tel: (775) 738-9258

8

Fax: (775) 738-8198

9

Attorneys for Plaintiffs

10

Anthony L. Hall, NSB 5977
Dora V. Lane, NSB 8424

11

HOLLAND & HART, LLP
5441 Kietzke Lane, Second Floor

12

Reno, NV 89511
Tel: (775) 327-3000

13

Fax: (775) 786-6179
Email: ahall@hollandhart.com

14

        dlane@hollandhart.com

15

Attorneys for Defendant

16

17

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

18

19

KURT KNUDSEN, DONALD CAPP,
LARRY MOON, STEVE VOLKERT, and
PAUL DYER on behalf of themselves, and
all others similarly situated,

Case No.: 3:09-CV-00385-BES-(VPC)

20

**DECLARATION OF MARK R.
THIERMAN IN SUPPORT OF
PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT**

21

                    Plaintiffs,

22

            vs.

23

QUEENSTAKE RESOURCE U.S.A. INC.,
YUKON-NEVADA GOLD CORP.,
collectively aka Yukon-Nevada/Queenstake
USA, Graham Dickson, and Shaun Heinrichs,

Judge: Honorable Robert C. Jones

24

25

26

                    Defendants.

27

28

I, Mark R. Thierman, hereby declare and state:

1.      The following declaration is based upon my own personal observation and knowledge, and if called upon to testify regarding the things contained herein, I could competently so testify.

2.      I am an attorney at law admitted to practice before the Supreme Courts of California and Nevada, all federal district courts located in California and Nevada and the United States Court of Appeals for the Ninth Circuit, the Court of Appeals for the District of Columbia of the United States Supreme Court.

3.      I am counsel for Plaintiffs in the matter entitled *Kurt Knudsen, Donald Capp, Larry Moon, Steve Volker, and Paul Dyer, on behalf of all others similarly situated, Plaintiffs vs. Queenstake Resource U.S.A. Inc., Yukon-Nevada Gold Corp., Graham Dickson, and Shaun Heinrichs, Defendants, Case Number 3:09-CV-00385-BES-(VPC)*.

4.      I received my Bachelors of Arts degree Magna Cum Laude from New York University in 1973, and was Phi Beta Kappa, Founders Day Award and Class Representative at graduation.  I also received the Mr. Justice Bloustein law award and Adoph Ochs Adler award for the community service for instituting the pre-law student paralegal program at the Office of Economic Opportunity, Queens Legal Services, Inc.

5.      I graduated from Harvard Law School and was admitted to practice in the State of California.  Since 1977, I have generally limited my practice to the area of Labor and Employment law, with an emphasis on traditional labor law subjects like apprenticeship, overtime compensation, prevailing wage, Labor Management (Taft Hartley) trust funds, and unfair labor practice litigation before agencies like the National Labor Relations Board, the California Division of Labor Standards Enforcement and the United States Department of Labor.

6.      I have authored and co-authored books and articles on the topic of labor relations law.  I am a co-author of the book entitled "Lowest Responsible Bidder – A Guide to Merit Shop Construction," and the content of "Safety Plan Builder" a software product published by Jian with a 300-page book on OSHA safety law.  I am the co-author of the chapter in prior version of the CEB text "Advising California Employers" on workplace safety.  I have written many

articles that have appeared in both industry publications and the magazine for the Labor Law Section of the California Bar.

7.     I have appeared on radio, an ABA "web cast" and at numerous seminars as a speaker on class action wage hour cases under both federal and California law.

8.     I estimate that I have been counsel in approximately 250 class actions during my legal career, and have tried four of those class actions to verdict, in addition to hundreds of trials of individual cases.

9.     I have represented parties in many reported cases.  I estimate that I have secured close to a billion dollars ($1,000,000,000) in restitution for class members in wage and hour class actions since 1997.  I was counsel for the Plaintiff class in a series of overtime class actions against Pacific Bell, which resulted in almost one-hundred million dollars ($100,000,000) in settlement payments.  I litigated prevailing wage cases against various public works contractors in California and Nevada, tried a qui tam case against a contractor based upon prevailing wage miscalculations, and litigated many cases on unlawful deductions and chargebacks under both California Labor Code Sections 221 and 2802.

10.     The most recent case I argued in the court of appeals was on March 8, 2010 in the case of *Sidney Jacobs v. Mandalay Corp*. No. 08-17765, which was case No. 2:08-cv-00640-RLH LRL in this Court.  On May 7, 2010, the Court issued a decision in favor of Plaintiff Jacobs.

11.     Recently I represented a group of stock and mortgage broker employees who sued for overtime, meal and rest period violations and unlawful pay deductions against large, national employers, including Bank of America, Smith Barney, Merrill Lynch, UBS, and AG Edwards.  These claims settled for amounts from $17 Million dollars for Bank of America's California's brokers, to $108 Million for Smith Barney Nationwide.  Recently, I settled the A.G. Edwards national class for about 14 million for about 12,000 brokers, a sum significantly less per broker work/month than in this case.  During negotiations in this case, opposing counsel produced a chart of the various work month amounts for loan officer overtime cases that settled recently.  I was counsel in almost all the cases and was aware of the others.  The numbers were accurate.

While there were differences between this case and those others, the differences were both positive and negative.

12. Attached hereto as Exhibit A is a true and correct copy of the Stipulation and Settlement Agreement between Plaintiffs and Defendants.

13. The parties in this matter extensively negotiated the Settlement, including negotiations and mediation conducted before the Honorable Magistrate Judge Valerie P. Cooke. The parties continued information negotiations following the mediation with Judge Cooke and tentatively agreed on a settlement on November 8, 2010. Prior to those discussions, the parties exchanged pertinent data and information related to Plaintiffs' causes of action.

14. The Parties have sufficient familiarity with the facts of the case to make an informed recommendation about the fairness of the Settlement. The Parties engaged in a broad exchange of documents, records and other information.

15. Defendants supplied significant data and information relating to the three causes of action in this case: breach of contract/WARN violations, failure to pay medical claims, failure to remit 401K deductions to employee accounts.

16. My co-counsel Travis Gerber and I sent out spot questionnaires to putative Class Members to determine the viability of other claims and relative value of the medical claims causes of action. As a result of theses questionnaires, we were able to ascertain whether Defendants paid their employees their final pay in a timely fashion (excluding the severance issues) and the scope of unpaid medical claims and 401K related issues.

17. Each side has apprised the other of their respective factual contentions, legal theories and defenses, resulting in extensive arms-length negotiations taking place among the Parties.

18. The parties had each been contacted by a field representative of the United States Department of Labor who represented that his office was monitoring the case, especially because of the various violations of the Employee Retirement Income Security Act ("ERISA") alleged in the complaint.

19.     The agreement of the parties was subject to review the by the United States Department of Labor Regional Offices which covered the Reno area.  At the insistence of the US DOL, the parties negotiated further changed in languages and increased the amounts available for various ERISA payouts slightly.  The negations included several "back and forth" sessions with the DOL until finally an agreement was reached that the DOL as well as all parties would accept.

20.     The Settlement for each participating Class Member is fair, reasonable and adequate, given the inherent risk of litigation, and the costs of pursuing such litigation.

21.     The Department of Labor has the power to restrict payment of attorneys fees or other costs of any employee benefit plan if those costs are not prudent and reasonable under the circumstances.

22.     The Department of Labor has not restricted the payment of attorneys fees or costs in this matter at all.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of June, 2011 at Reno, Nevada.


By: /s/ Mark R. Thierman
        Mark R. Thierman

# EXHIBIT A

Mark R. Thierman, NSB 8285
THIERMAN LAW FIRM
7287 Lakeside Drive
Reno, NV 89511
Tel: (775) 284-1500
Fax: (775) 703-5027
Email: laborlawyer@pacbell.net

Travis W. Gerber, NSB 8083
GERBER LAW OFFICES, LLP
491 4th Street
Elko, NV 89801
Tel: (775) 738-9258
Fax: (775) 738-8198

Attorneys for Plaintiffs

Anthony L. Hall, NSB 5977
Dora V. Lane, NSB 8424
HOLLAND & HART, LLP
5441 Kietzke Lane, Second Floor
Reno, NV 89511
Tel: (775) 327-3000
Fax: (775) 786-6179
Email: ahall@hollandhart.com
        dlane@hollandhart.com

Attorneys for Defendant

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| KURT KNUDSEN, DONALD CAPP, LARRY MOON, STEVE VOLKERT, and PAUL DYER on behalf of themselves, and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> QUEENSTAKE RESOURCE U.S.A. INC., YUKON-NEVADA GOLD CORP., collectively aka Yukon-Nevada/Queenstake USA, Graham Dickson, and Shaun Heinrichs, <br><br> Defendants. | Case No.: 3:09-CV-00385-BES-(VPC) <br><br> **JOINT STIPULATION OF SETTLEMENT AND RELEASE** <br><br> Date: <br> Time: <br> Ctrm: <br> Judge: |

1

1    Plaintiffs Kurt Knudsen, Donald Capp, Larry Moon, Steve Volker, and Paul Dyer,

2    individually and on behalf of the Class, and Defendants Queenstake Resource U.S.A. Inc.,

3    Yukon-Nevada Gold Corp., Graham Dickson, and Shaun Heinrichs, by and through their

4    respective counsel of record, agree to resolve the above-captioned case through this Joint

5    Stipulation of Settlement and Release.

6                                                **I.**

7                                        **DEFINITIONS**

8          1.      "Action" means the following civil action in the United States District Court for

9    the District of Nevada:  *Kurt Knudsen, Donald Capp, Larry Moon, Steve Volker, and Paul Dyer,*

10   *on behalf of all others similarly situated, Plaintiffs vs. Queenstake Resource U.S.A. Inc., Yukon-*

11   *Nevada Gold Corp., Graham Dickson, and Shaun Heinrichs, Defendants,* Case Number 3:09-CV-

12   00385-BES-(VPC), filed July 17, 2009.

13         2.      "Claims Administrator" shall mean an administrator appointed by Defendants and

14   charged with administering the Settlement.

15         3.      "Claim Form" shall mean the form approved by the Parties and subject to Court

16   approval which each Class Member must submit to recover a portion of the Settlement proceeds,

17   the form of which is attached hereto as Exhibit 1.

18         4.      "Classes" or "Class Members" shall mean the named Plaintiffs, Kurt Knudsen,

19   Donald Capp, Larry Moon, Steve Volker, and Paul Dyer, and, collectively, all persons identified

20   as belonging to any class as defined in Paragraphs 5-7.

21         5.      The "401K Class" shall mean all Queenstake employees and/or former

22   employees from whose paychecks Queenstake withheld intended 401K contributions in or

23   about August 2008, but which contributions were not deposited in the employees' and/or

24   former employees' respective 401K accounts.  The "401K Class" shall also include all

25   Queenstake employees and/or former employees that had taken loans out against their

26   401K and for whose paychecks Queenstake withheld intended 401K loan repayment

27   amounts in or about August 2008, but which contributions were not deposited in the

28

                                                 2

1   employees' and/or former employees' respective 401K accounts.  The term "401K Class

2   Member" shall refer to any and all members of the 401K Class.

3          6.     The "Medical Claims Class" shall mean all Queenstake employees and/or former

4   employees who submitted medical claims during the period starting ninety (90) days prior to

5   August 8, 2008 and continuing for sixty (60) days after August 8, 2008 (or between May 9, 2008

6   and October 7, 2008), and whose claims have not been paid by Queenstake.  Additionally, the

7   "Medical Claims Class" shall include all Queenstake employees and/or former employees

8   who contributed to flex medical savings accounts in 2008 and who had remaining

9   balances from their contributions in said accounts at the time of the mass layoff.  The term

10  "Medical Claims Class Member" shall refer to any and all members of the Medical Claims Class.

11         7.     The "WARN/Contract Class" shall mean all employees who were terminated by

12  Queenstake on or about August 8, 2008 or within thirty (30) days thereafter or before and who

13  have received pay for only thirty (30) days after their employment termination.  The term

14  "WARN/Contract Class Member" shall refer to any and all members of the WARN/Contract

15  Class.

16         8.     "Class Member Release Period" refers to the period of ninety (90) days prior and

17  sixty (60) days after Defendants' mass layoff on August 8, 2008 (or between May 9, 2008 and

18  October 7, 2008).

19         9.     "Class Representatives" shall mean Plaintiffs Kurt Knudsen, Donald Capp, Larry

20  Moon, Steve Volker, and Paul Dyer.

21         10.    "Class Counsel" shall mean Mark R. Thierman of the Thierman Law Firm and

22  Travis Gerber of Gerber Law Offices.

23         11.    "Court" refers to the United States District Court for the District of Nevada.

24         12.    "Cure Letter" shall mean correspondence sent by the Claims Administrator to

25  notify a Class Member who files a defective claim prior to the submission deadline that his or her

26  claim is defective and must be cured to become valid.

27         13.    "Defendants" shall mean Queenstake Resources U.S.A. Inc., and all of its officers,

28  employees, directors, agents, attorneys, parents, insurers, parent companies, predecessors,

1    successors, subsidiaries, and related and affiliated entities, Yukon-Nevada Gold Corp., and all of

2    its officers, employees, directors, agents, attorneys, parents, insurers, parent companies,

3    predecessors, successors, subsidiaries, and related and affiliated entities, Graham Dickson, and

4    Shaun Heinrichs.

5          14.     "Final Judgment" shall mean the Order Granting Final Approval of Class Action

6    Settlement and Judgment entered by the Court.

7          15.     "Payment" shall mean the dollar amount to be paid by Defendants pursuant to this

8    Settlement, exclusive of employer taxes on the portion of the distributed proceeds attributed to

9    W-2 wage income.

10          16.     "Notice" shall mean the Notice of Pendency of Class Action, Proposed Settlement

11    and Hearing Date for Court Approval approved by the Parties and subject to Court approval, the

12    form of which is attached hereto as Exhibit 2.  Upon Court approval, the Claims Administrator

13    shall mail a copy to each Class Member.

14          17.     "Parties" shall mean the Class Representatives and Defendants.

15          18.     "Settlement" shall mean this Joint Stipulation of Settlement and Release.

16          19.     "Settlement Effective Date" shall mean the first day following the last of the

17    following occurrences:

18              a.     The date the time to appeal or seek permission to appeal or seek

19    reconsideration of the entry of a Final Judgment approving the Settlement has expired

20    with no appeal or request for reconsideration having been taken or sought; or

21              b.     If an appeal or request for reconsideration has been taken or sought, the

22    date the Final Judgment is finally affirmed by an appellate court with no possibility of

23    subsequent appeal or other judicial review, or the date the appeal(s) or other judicial

24    review are finally dismissed with no possibility of subsequent appeal or other judicial

25    review.

26                                              **II.**

27                                        **RECITALS**

28          20.     On July 17, 2009, Plaintiffs Kurt Knudsen, Donald Capp, Larry Moon, Steve

                                                   4

Volker, and Paul Dyer, commenced the above-captioned Action in the United States District Court for the District of Nevada.  In the Action, Plaintiffs, on behalf of themselves and all others similarly situated, alleged the following causes of action:

    a.   Breach of contract—Plaintiffs alleged that Defendants breached their contract to the Class for failing to pay sixty (60) days of severance compensation that was promised to the Class in consideration for not filing legal action against Defendants.

    b.   Violation of the federal Worker Adjustment and Retraining Notification Act (WARN) (29 U.S.C. § 2104(a)(5))—Plaintiffs alleged that Defendants violated the WARN Act for failing to provide the Class with sixty (60) days advance notice of the mass layoff and/or failing to provide sixty (60) days of compensation as a result of the layoff.

    c.   Violation of the Employee Retirement Income Security Act ("ERISA") (29 U.S.C. § 1132)—Plaintiffs alleged that Defendants violated ERISA for failing to pay medical benefits and transmit medical insurance payments to the appropriate third party medical insurance carrier, and for failing to transmit to the appropriate third party administrator 401K pension monies that were deducted from Class Members' paychecks.

    d.  Lien on the properties where the Classes previously performed work.

21.    Plaintiffs believe that the Action is meritorious and that the Action is appropriate for class-action treatment.

22.    Defendants deny any liability or wrongdoing of any kind for alleged breach of contract, WARN, and ERISA violations, and contend that, for any purpose other than settlement, the Action is not appropriate for class action treatment pursuant to Federal Rule of Civil Procedure Rule 23 or any other rule of Court applicable to the Action.

23.    On November 8, 2010, the Parties reached a binding agreement to settle the Action on the terms set forth below.

24.    Class Counsel represents that he has conducted a thorough investigation into the

5

facts of this case, and has diligently pursued an investigation of the Class Members' claims against Defendants, including (i) interviewing Class Members and analyzing the results of Class Member interviews; (ii) reviewing relevant documents; and (iii) researching the applicable law and the potential defenses. Based on his own independent investigation and evaluation, Class Counsel is of the opinion that the Settlement is fair, reasonable, and adequate and is in the best interest of the Class Members in light of all known facts and circumstances, including the risk of significant delay, and the defenses asserted by Defendants. Defendants agree that the Settlement is fair, reasonable and adequate.

25.     Class Counsel and Defendants agree that the medical plan was terminated on August 8, 2008.

26.     The entry of Final Judgment in the Action shall release all claims brought by Plaintiffs and the Class in the Action. The Parties agree to cooperate and take all steps necessary and appropriate to obtain preliminary and final approval of this Settlement, to effectuate its terms, and to dismiss the Action with prejudice.

### III.

### TERMS OF SETTLEMENT

27.     <u>Severance.</u>  Defendants will pay the full net amount of severance for thirty (30) more days as has previously been already paid to employees, which amounts to $1,210,431.46 remaining to be paid. This payment will be deposited with the Claims Administrator, and any unclaimed amounts will be remitted to Defendants. Defendants will remit the necessary employment taxes related to the severance directly to the IRS. An employee who submits a claim shall also submit a new W-4 form; otherwise, the last W-4 form on file will be used to calculate the tax payment. The employer will pay its normal share of all payroll burdens, as if the severance pay was an ordinary wage of the employee. The severance amount is reversionary, and any unused amounts will be remitted to Defendants.

28.     <u>Medical Claims.</u> Defendants will deposit $1.6 million with the Claims Administrator to cover outstanding medical claims. The $1.6 million will be used to reimburse employees in full (minus applicable deductibles and/or co-pays) for any medical claims submitted

6

during the period spanning between ninety (90) days before August 8, 2008 and sixty (60) days thereafter (or between May 9, 2008 and October 7, 2008), which employees have already paid. This applies to any partial payments (minus applicable deductibles and/or co-pays) that employees may have made, even though the claims have not been paid in full.  With respect to claims submitted between May 9, 2008 and October 7, 2008, which are still fully outstanding and have not been paid, the Claims Administrator will attempt to negotiate a satisfaction of these claims at a discount.  If the Claims Administrator is able to negotiate a discount which, in his or her discretion, is reasonable, the Claims Administrator shall pay the discounted amount (minus applicable deductibles and/or co-pays) and resolve the claims.  Any medical claims that still remain outstanding (minus applicable deductibles and/or co-pays) will be paid from the balance left after full reimbursement of the claims (or parts thereof) that employees have already covered and payment of the negotiated discounted claims.  If the amount of the claims outstanding after such payments have been made exceeds the balance left from the $1.6 million, the remaining unpaid claims will be paid on a pro-rata basis from the available remaining amount from the fund. The $1.6 million deposit is reversionary, and any unused amounts will be remitted to Defendants.

With respect to the claims that have been assigned to Northeastern Nevada Regional Hospital ("NNRH") and were litigated by the hospital, these claims were handled outside the $1.6 million to be deposited with the Claims Administrator to cover outstanding medical claims. Defendants settled the NNRH claims separately from the $1.6 million fund and obtained a release to avoid potential future demands against employees in connection with these claims.

29.   401K Benefits.  Defendants will pay a total of $75,000.00, which will fully cover and exceed the amount owed with respect to 401K deductions made.  The $75,000.00 amount will be deposited with the Claims Administrator who will distribute the respective amounts to the 401K Class Members by the amount of money deducted from paychecks that was not properly transmitted to the employee's individual 401K accounts.  The parties estimate that out of the total amount of $75,000.00, $69,025.85 will be allocated to cover actual unpaid 401K contributions withheld from employee paychecks.  The remaining $5,974.15 will be paid to the 401K Class Members, in proportion to the 401K amount that these will receive.  To the extent possible (e.g., where the employee still has an open 401K account with Fidelity - Defendant Queenstake's 401K

7

administrator – which has not been rolled-over and where allowed by the plan documents) the amount for each Class Member will be deposited in the Class Member's 401K account.  To the extent such Class Member still has a balance of a loan or receives direct payment (as opposed to the money being deposited in the Class Member's 401K account) of an amount pursuant to this Agreement, the Class Member will receive a 1099 for such amount(s).  In the cases where the amounts can be deposited into a Class Member's 401K account, it will be handled by Fidelity as the plan administrator. Defendants will also pay a total of $19,690.49, to the Queenstake employees and/or former employees that had taken loans out against their 401K and for whose paychecks Queenstake withheld intended 401K loan repayment amounts in or about August 2008, but which contributions were not deposited in the employees' and/or former employees' respective 401K accounts.  The $19,690.49 amount will be deposited with the Claims Administrator who will distribute the respective amounts to the appropriate 401 K Class Members by the amount of money deducted from paychecks that was not properly transmitted to the employee's individual 401K accounts as a loan repayment.  By approval of this settlement, the Court is also ordering Fidelity - Defendant Queenstake's 401K administrator – to provide information to Queenstake (including prior IRS Form 1099 information) which is needed to effectuate this settlement.

30.   <u>Enhancements for Class Representatives.</u>  Defendants will pay each Plaintiff $20,000.00 as enhancements, for a total of $100,000.00.  It will be up to Plaintiffs to establish their adequacy as class representatives.  Defendants will not oppose or in any way undermine the enhancement request.  If any Plaintiff is rejected as a class representative, or is not awarded the full amount of the enhancement, the Plaintiff counsel will be permitted to find an additional class representative to serve as a replacement.  Any new replacement will be entitled only to a $5,000.00 enhancement.  If there are multiple replacements per one original plaintiff, the replacements will divide the $5,000.00 in equal shares and will not be entitled to $5,000.00 each.

31.   <u>Claims Administrator Costs.</u>  The reasonable costs of the Claims Administrator and any costs and expenses that the Claims Administrator incurs in sending proper class notices and administration of the settlement will be deducted from the $1.6 million medical claims fund.

32.   <u>Attorney's Fees and Expenses.</u>  Defendants agree to pay Class Counsel

8

$780,000.00 in attorney's fees and costs. These attorney's fees and costs shall not be offset against class recovery but are a direct cost of Defendants, the amount of which is fixed as a term of the settlement agreement. The attorney's fees and costs amount will be payable to Plaintiffs' counsel immediately after the Settlement Effective Date.

33.    <u>Deposit of Settlement Funds.</u>  Defendants will deposit the amount of all settlement funds (exclusive of the settlement funds related to attorneys' fees) into an interest bearing account at a Bank located and doing business in the State of Nevada with the names of all class members listed on the account (or other appropriate means to provide FDIC insurance of the principle sum deposited), by March 31, 2011. The settlement fees related to attorneys' fees will be deposited into the account on the date that this settlement is approved or April 15, whichever is earlier.

**IV.**

**NOTICE TO THE PLAINTIFF CLASS**

34.    Defendants shall provide to the Claims Administrator, within ten (10) days following the Court's entry of the Order Granting Preliminary Approval of the Settlement and Notice, a database of all putative Class Members, including last known addresses, telephone numbers, and social security numbers. In addition, Plaintiffs' counsel and Defendant's counsel will submit each their combined list of all known outstanding claims for medical reimbursement by class members. This database shall be based on payroll and other business records and in a format acceptable to the Claims Administrator. The Parties agree to consult with the Claims Administrator prior to the production date to ensure that the format of the database will be acceptable to the Claims Administrator.

35.    The Claims Administrator shall send the Notice to the Class Members by first class mail as soon as practical, but in no case more than forty (40) days of the Court's entry of the Order Granting Preliminary Approval of this Settlement and Notice. The Claims Administrator will include with the Notice a Claim Form in the form attached as Exhibits 1.

36.    Class Members shall have sixty (60) days from the date that Notice was sent to submit a valid Claim Form. The Claims Administrator will provide Class Counsel the names, last

9

known home addresses and last known home telephone numbers of Class Members who have not submitted Claim Forms within the first thirty (30) days after the mailing date of the Notice. The claims form will provide the employee as much information as is available to the Claims Administrator to assist the employee in reporting all amounts of unpaid medical reimbursement, the unremitted 401K pension amounts, if any, and the amount of thirty days of pay with applicable tax deductions. The form shall both seek to confirm the information contained on the form, as well as solicit corrections and information for additional amounts claimed. Any amounts not corrected and amounts added shall be deemed to be included in the claim. Because of the confidential medical and financial information contained on the claims form, the forms shall be sent in such a manner as to insure privacy, and the return form shall be likewise sealed or closed from public view.

37.     The Claims Administrator will use standard skip-tracing devices to verify the accuracy of all addresses before the initial mailing date to ensure that the Notice and the Claim Form are sent to all Class Members at the addresses most likely to result in immediate receipt of the claim documents. It will be conclusively presumed that if an envelope so mailed has not been returned within thirty (30) days of the mailing, the Class Member received the Notice. With respect to returned envelopes, the Claims Administrator will use reasonable diligence to obtain a current address and re-mail the envelope to such address within five (5) days of the receipt of the returned envelope.

38.     The Claims Administrator will mail a reminder postcard no later than ten (10) days before the deadline to submit Claim Forms. If the Claims Administrator receives a timely but defective Claim Form, the Claims Administrator shall send a Cure Letter to such Class Member informing them that their claim is defective and must be cured to become valid. The Claims Administrator must postmark the Cure Letter within three (3) business days of receipt of any timely but defective claim. The Cure Letter shall state that the Class Member has 15 calendar days from the date of the Cure Letter to postmark a revised claim. If a Class Member postmarks a revised claim more than 15 calendar days after he or she receives the Cure Letter, the claim will be invalid and the claim filing deadline will remain unchanged. Revised Claim Forms that bear

10

no postmark are valid only if received by the Claims Administrator within ten (10) days of the 15-day deadline that the Claims Administrator has set. If a Class Member responds to a Cure Letter by filing a claim the Claims Administrator deems to be defective, the Claims Administrator shall transmit to Class Counsel within two (2) business days of receipt of the defective curative Claim Form a copy of the Claim Form and reason the Claims Administrator has deemed the Claim Form defective. The Claims Administrator shall have no further obligation to give notice to the Class Member of a need to cure. Such defective claims will be considered invalid and, if received after the submission deadline, Class Members have no right to cure them.

39.     Class Counsel shall provide the Court, at least five (5) days prior to the final fairness hearing, a declaration by the Claims Administrator specifying the due diligence it has undertaken with regard to the mailing of the Notice.

**V.**

**CLAIMS ADMINISTRATOR'S ADDITIONAL DUTIES**

40.     The Claims Administrator will certify jointly to Class Counsel and Defense counsel which Claim Forms were timely or untimely filed.

41.     The Claims Administrator shall report to both Parties, in summary or narrative form, the substance of any discrepancies that arise in effectuating the Settlement. The Claims Administrator shall be granted reasonable access to Defendants' records in order to perform its duties. In the event of any dispute over the payment of settlement funds, the Parties will meet and confer in good faith in an effort to resolve the dispute, and if the Parties are unable to reach an agreement, the Claims Administrator shall decide the dispute, and its decision will be final.

42.     For timely and valid claims, the Claims Administrator will submit, to both Parties, a list of the amounts due to each Class Member pursuant to this Settlement at the expiration of the Opt-In period.

43.     To the extent applicable, the Claims Administrator will act in accordance with ERISA's fiduciary standards. Further, the Claims Administrator will timely notify claimants whose claims are untimely or denied for other reasons.

11

44.     The Claims Administrator shall be responsible for issuing the payments. Defendants will be responsible for calculating and withholding all required state and federal taxes, and issuing IRS Form 1099s.  Defendants will file proof of payment with the Court and will serve Class Counsel with a copy within forty (40) days of the Settlement Effective Date, and will provide a copy to the Department of Labor.

## VI.

### RELEASE OF CLAIMS

45.     <u>Released Claims by Class Members</u>: The Class Members fully and finally release and discharge Defendants, and their former and present parents, predecessors in interest, successors in interest, subsidiaries, and affiliated corporations and their officers, directors, employees, partners, shareholders and agents, attorneys, insurers, and any other assigns or legal representatives ("Class Members' Released Parties"), from any and all claims, including thirty (30) days severance compensation resulting from the breach of contract/WARN claims, the failure to transmit 401K and/or medical contributions, and all medical claims and consequences resulting from Defendants failure to pay medical insurance preceding the layoff and for sixty (60) days thereafter.  The Class Members also release any lien claims they may have had in the Action.  This release encompasses all claims that were, or reasonably could have been brought as a result of the facts alleged in the complaint on file in this action.

46.     <u>Released Claims by the Class Representatives</u>: The Class Representatives fully and finally release and discharge Defendants, and their former and present parents, predecessors in interest, successors in interest, subsidiaries, and affiliated corporations and their officers, directors, employees, partners, shareholders and agents, attorneys, insurers, and any other assigns or legal representatives ("Class Representatives' Released Parties"), from any and all claims, including thirty (30) days severance compensation resulting from the breach of contract/WARN claims, the failure to transmit 401K and/or medical contributions, and all medical claims and consequences resulting from Defendants failure to pay medical insurance preceding the layoff and for sixty (60) days thereafter.  The Class Representatives also release any lien claims they may have had in the Action.

12

47.     Class Members' Released Claims and Class Representatives' Released Claims shall be referred to collectively as the "Released Claims."

### VII.

### DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL

48.     After approval by the Department of Labor as provided below, Plaintiffs shall move the Court for the entry of an Order Granting Preliminary Approval of the Settlement and Notice, which in substantial part provides the following relief:

a)      Scheduling a fairness hearing on the question whether the proposed Settlement should be finally approved as fair, reasonable and adequate as to the Class;

b)      Approving as to form and content the proposed Notice;

c)      Approving as to form and content the proposed Claim Form;

d)      Directing the mailing of the Notice and the Claim Form by first class mail to the Class Members;

e)      Preliminarily approving the Settlement;

f)      Preliminarily certifying the Class for purposes of Settlement (as described below, Plaintiffs will actually move to certify three separate classes);

g)      Approving Mark Thierman of the Thierman Law Firm and Travis Gerber of Gerber Law Offices, LLP, as Class Counsel;

h)      Approving Plaintiffs Kurt Knudsen, Donald Capp, Larry Moon, Steve Volker, and Paul Dyer, as Class Representatives;

i)      Approving the Claims Administrator; and

j)      Declaring the date on which the Court grants preliminary approval of the Settlement as the date that the Settlement is deemed filed for purposes of providing CAFA notice to the appropriate federal and state officials.

Defendants will not oppose Plaintiffs' Motion.  A certified copy of Plaintiffs' Motion shall be provided to the United States Department of Labor by Plaintiffs.

13

## VIII.

## DUTIES OF THE PARTIES FOLLOWING PRELIMINARY COURT APPROVAL

49.     Following preliminary approval of the Settlement by the Court, the Parties will cooperate in seeking an order granting final approval of the Settlement, and a Final Judgment thereon, which provides for the following relief from the Court:

a)      Approving the Settlement, adjudging the terms thereof to be fair, reasonable and adequate, and directing consummation of its terms and provisions;

b)      Approving Class Counsel's award of attorneys' fees and reimbursement of costs;

c)      Approving the Class Representatives' Service Enhancements;

d)      Certifying the Class for Settlement purposes;

e)      Dismissing the Actions on the merits and with prejudice and permanently barring all Class Members from prosecuting against the Released Parties any and all Released Claims arising during the Class Members' Released Period;

f)      Permanently barring the Class Representatives from prosecuting against the Released Parties any and all Class Representatives' Released Claims arising during the Class Representatives' Released Period; and

g)      Retaining jurisdiction over the Actions for the purposes of interpreting and enforcing the terms of the Settlement.

## IX.

## NOTICE TO GOVERNMENT ENTITIES

50.     A certified copy of Plaintiffs' motion for Preliminary Approval of the Settlement will be provided to the United States Department of Labor.  The Settlement must be approved by the United States Department of Labor to Defendants' reasonable satisfaction.  Without such approval by the Department of Labor, the Settlement will be null and void and without further force and effect.

14

51.     Defendants shall, within ten (10) days following the Court's entry of the Order Granting Preliminary Approval of the Settlement, serve upon the appropriate State official of each State in which a Class Member resides and the Attorney General of the United States a notice of the proposed Settlement in compliance with the requirements of the Class Action Fairness Act ("CAFA").

## X.

## CLASS CERTIFICATION

52.     Plaintiffs will move to provisionally certify three employee classes for purposes of settlement:  the 401K class, the medical claims class, and the WARN/contract class.  There will be no other proposed classes, and the allegations as to any such alleged classes will be dismissed with prejudice.  Defendants reserve the right to object to the proposed class certification if the Court rejects the settlement, if the class otherwise fails, or if the settlement does not become final.

## XI.

## VOIDING THE AGREEMENT

53.     If this Settlement is not approved, the Settlement shall not be used nor be admissible in any subsequent proceeding either in this Court or in any other Court or forum.

## XII.

## PARTIES' AUTHORITY

54.     The respective signatories to the Settlement represent that they are fully authorized to enter into this Settlement and bind the respective Parties to its terms and conditions.

## XIII.

## MUTUAL FULL COOPERATION

55.     The Parties agree to cooperate fully with each other to accomplish the terms of this Settlement, including but not limited to, execution of Settlement documents, and to take such other action as may reasonably be necessary to implement the terms of this Settlement.  The Parties shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate the terms of this Settlement.  As soon as practicable after execution of this Settlement, Class Counsel

15

1   shall, with the assistance and cooperation of Defendants and their counsel, take all necessary

2   steps to secure the Court's Final Judgment.

3          56.    Defendants agree that they will not attempt to discourage Class Members from

4   filing Claim Forms.

## XIV.

## NO PRIOR ASSIGNMENTS

7          57.    The Parties represent, covenant, and warrant that they have not directly or

8   indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any

9   person or entity any portion of any liability, claim, demand, action, cause of action or right

10  released and discharged in this Settlement.

## XV.

## NO ADMISSION

13         58.    Nothing contained in this Settlement shall be construed or deemed an admission of

14  liability, culpability, negligence, or wrongdoing on the part of Defendants and Defendants deny

15  any such liability.  Each of the Parties has entered into this Settlement with the intention to avoid

16  further disputes and litigation with the attendant inconvenience and expenses.  This Settlement is

17  a settlement document and shall be inadmissible in evidence in any proceeding, except an action

18  or proceeding to approve, interpret, or enforce its terms.

## XVI.

## ENFORCEMENT ACTIONS

21         59.    In the event that one or more of the Parties institutes any legal action, arbitration,

22  or other proceeding against any other Party or Parties to enforce the provisions of this Settlement

23  or to declare rights and/or obligations under this Settlement, the successful Party or Parties shall

24  be entitled to recover from the unsuccessful Party or Parties reasonable attorneys' fees and costs,

25  including expert witness fees and costs incurred in connection with any enforcement actions.

26

27

28

## XVII.

## NOTICES

60.    Unless otherwise specifically provided, all notices, demands or other communications shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

(a)    To the Class:

Mark Thierman
Thierman Law Firm
7287 Lakeside Drive
Reno, NV 89511
Email: laborlawyer@pacbell.net

(b)    To Defendants:

Anthony Hall
5441 Kietzke Lane, Second Floor
Reno, NV 89511
Tel: (775) 327-3000
Fax: (775) 786-6179
Email: ahall@hollandhart.com

## XVIII.

## CONSTRUCTION

61.    The Parties agree that the terms and conditions of this Settlement are the result of lengthy, intensive arms-length negotiations between the Parties and that this Settlement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her or its counsel participated in the drafting of this Settlement.

## XIX.

## CAPTIONS AND INTERPRETATIONS

62.    Paragraph titles or captions contained in this Settlement are a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement or any provision.  Each term of this Settlement is contractual and not merely a recital.

17

## XX.

## MODIFICATION

63.     This Settlement may not be changed, altered, or modified, except in writing and signed by the Parties, and approved by the Court.  This Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

## XXI.

## INTEGRATION CLAUSE

64.     This Settlement contains the entire agreement between the Parties relating to the resolution of the Action, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are merged in this Settlement.  No rights under this Settlement may be waived except in writing.

## XXII.

## BINDING ON ASSIGNS

65.     This Settlement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

## XXIII.

## CLASS COUNSEL SIGNATORIES

66.     It is agreed that because the members of the Class are so numerous, it is impossible or impractical to have each Class Member execute this Settlement.  The Notice, the form of which is attached as Exhibit 2, will advise all Class Members of the binding nature of the release.  The Notice shall have the same force and effect as if this Settlement were executed by each Class Member with regard to Class Members' Released State Law Claims, and for those Class Members who timely submit Consent to Join Settlement Forms, all Class Members' Released Federal Law Claims.

18

## XXIV.

### COUNTERPARTS

67.    This Settlement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement, which shall be binding upon and effective as to all Parties.

## XXV.

### RIGHT OF APPEAL

68.    The Parties agree to waive appeals, with the following exceptions: (1) the Parties may appeal if the Court materially modifies the Settlement; and (2) Plaintiffs may appeal a reduction, if any, in the attorneys' fees amount or Class Representatives' Payments.

DATED: May 18, 2011            HOLLAND & HART, LLP


By: _____
        Anthony Hall

Attorney for Defendants

DATED: May 16, 2011            REPRESENTATIVE PLAINTIFF


By: _____
        Kurt Knudsen

DATED: May 16, 2011            REPRESENTATIVE PLAINTIFF


By: _____
        Donald Capp

19

JOINT STIPULATION OF SETTLEMENT AND RELEASE – 3:09-CV-00385-BES-(VPC)

DATED: May _17_, 2011            REPRESENTATIVE PLAINTIFF

                                 By: _____
                                       Larry Moon

DATED: May _17_, 2011            REPRESENTATIVE PLAINTIFF

                                 By: _____
                                       Steve Volker

DATED: May ___, 2010             REPRESENTATIVE PLAINTIFF

                                 By: _____
                                       Paul Dyer

DATED: May _18_, 2011            THIERMAN LAW FIRM

                                 By: _____
                                       Mark Thierman

                                 Attorney for Plaintiff

DATED: May _16_, 2011            GERBER LAW OFFICES, LLP

                                 By: _____
                                       Travis Gerber

                                 Attorney for Plaintiff

20

DATED: May ___, 2011            REPRESENTATIVE PLAINTIFF


                                By:_____
                                    Larry Moon


DATED: May ___, 2011            REPRESENTATIVE PLAINTIFF


                                By:_____
                                    Steve Volker


DATED: May _17_, 2010           REPRESENTATIVE PLAINTIFF


                                By:_____
                                    Paul Dyer


DATED: May ___, 2011            THIERMAN LAW FIRM


                                By: _____
                                    Mark Thierman

                                Attorney for Plaintiff


DATED: May ___, 2011            GERBER LAW OFFICES, LLP


                                By: _____
                                    Travis Gerber

                                Attorney for Plaintiff

20

**Exhibit "1"**

| | |
|---|---|
| KURT KNUDSEN, DONALD CAPP, LARRY MOON, STEVE VOLKERT, and PAUL DYER on behalf of themselves, and all others similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>QUEENSTAKE RESOURCE U.S.A. INC., YUKON-NEVADA GOLD CORP., collectively aka Yukon-Nevada/Queenstake USA, Graham Dickson, and Shaun Heinrichs,<br><br>    Defendants. | Case No.: 3:09-CV-00385-BES-(VPC)<br><br>**PROPOSED CLAIM FORM**<br><br>Date:<br>Time:<br>Ctrm:<br>Judge: |

The parties hereby stipulate to the proposed Claim Form.

**CLAIM FORM**

PLEASE PRINT CLEARLY

If your want to receive your share of this class action Settlement, you must:

(1)    COMPLETE THIS CLAIM IN ITS ENTIRETY AND SIGN THE FORM UNDER PENALTY OF PERJURY;

(2)    ENCLOSE A PHOTOCOPY OF YOUR DRIVER'S LICENSE OR OTHER FORM OF GOVERNMENT –ISSUED PICTURE IDENTIFICATION (E.G., PASSPORT, ID CARD); AND

(3)    RETURN THIS CLAIM FORM TO THE ADDRESS BELOW NOT LATER THAN [INSERT DATE]

[INSERT CLAIMS ADMINISTRATOR ADDRESS]

I declare as follows:

(1)    I received notice of the proposed Settlement in this Action and wish to receive my share of the proposed Settlement.

(2)    I was employed by Queenstake Resources U.S.A., Inc. and/or Yukon-Nevada Gold Corp.,

21

("Yukon-Nevada/Queenstake") within thirty (30) days before or after the August 8, 2008, layoff.

(3)     Please check the following if applicable:

A. _____ Between May 9, 2008 and August 8, 2008, I submitted the following claims to Queenstake that should have been covered by Queenstake's medical insurance, but which I have fully paid myself.  Please list all medical claims that you incurred and fully paid (minus applicable deductibles and co-pays), which should have been covered by Queenstake's medical insurance.  Please do not list medical claims that you were able to cover through other insurance. **(There is no need to submit documentary proof for the claims listed if you have already submitted such proof in response to the Joint Questionnaire you received in May or June 2010.  Otherwise, please submit documentary proof of the listed claims.)**

_____

_____

_____

B. _____ Between May 9, 2008 and August 8, 2008, I submitted the following claims to Queenstake that should have been covered by Queenstake's medical insurance, but which I partially paid myself.  Please list all medical claims that you incurred and partially paid (minus applicable deductibles and co-pays), which should have been covered by Queenstake's medical insurance.  Please also indicate the amount of the claim, which you partially paid.  Please do not list medical claims that you were able to cover through other insurance.  **(There is no need to submit documentary proof for the claims listed if you have already submitted such proof in response to the Joint Questionnaire you received in May or June 2010.  Otherwise, please submit documentary proof of the listed claims.)**

_____

_____

_____

C. _____ Between May 9, 2008 and August 8, 2008, I submitted the following claims to Queenstake that should have been covered by Queenstake's medical insurance, but which are still outstanding.  Please list all medical claims that you incurred (minus applicable deductibles and

22

co-pays), which should have been covered by Queenstake's medical insurance, but which are still outstanding. **(There is no need to submit documentary proof for the claims listed if you have already submitted such proof in response to the Joint Questionnaire you received in May or June 2010. Otherwise, please submit documentary proof of the listed claims.)**

_____

_____

_____

D. _____ Between August 9, 2008 and October 7, 2008, I submitted the following claims to Queenstake that should have been covered by Queenstake's medical insurance, but which I have fully paid myself. Please list all medical claims that you incurred and fully paid (minus applicable deductibles and co-pays), which should have been covered by Queenstake's medical insurance. Please do not list medical claims that you were able to cover through other insurance. **(There is no need to submit documentary proof for the claims you listed if you have already submitted such proof in response to the Joint Questionnaire you received in May or June 2010. Otherwise, please submit documentary proof of the listed claims.)**

_____

_____

_____

E. _____ Between August 9, 2008 and October 7, 2008, I submitted the following claims to Queenstake that should have been covered by Queenstake's medical insurance, but which I partially paid myself. Please list all medical claims that you incurred and partially paid (minus applicable deductibles and co-pays), which should have been covered by Queenstake's medical insurance. Please also indicate the amount of the claim, which you partially paid. Please do not list medical claims that you were able to cover through other insurance. **(There is no need to submit documentary proof for the claims you listed if you have already submitted such proof in response to the Joint Questionnaire you received in May or June 2010. Otherwise, please submit documentary proof of the listed claims.)**

_____

23

1

2

F. _____ Between August 9, 2008 and October 7, 2008, I submitted the following claims to Queenstake that should have been covered by Queenstake's medical insurance, but which are still outstanding.  Please list all medical claims that you incurred (minus applicable deductibles and co-pays), which should have been covered by Queenstake's medical insurance, but which are still outstanding.  **(There is no need to submit documentary proof for the claims you listed if you have already submitted such proof in response to the Joint Questionnaire you received in May or June 2010.  Otherwise, please submit documentary proof of the listed claims.)**

G. In 2008, I contributed to a flex medical savings account with Queenstake and had a remaining balance from my contributions in said account at the time of the mass layoff.  Please state the amount below if the amount is known to you.  **(There is no need to state an amount or submit documentary proof for the claim, however you may state the amount and submit proof of said claim if available.)**

NOTE: Under this Settlement Agreement, any claim that was settled directly with the medical provider is deemed to have been paid in full.

(4)   I understand that, in signing this form, I am consenting to participate in a class action settlement of the above caption case and consent to release all of the claims described in the Notice (and stated in full in the Joint Stipulation of Settlement and Release Between Plaintiffs and Defendants).

(5)   I also understand that it is my responsibility to timely complete and return this form (and any necessary accompanying documentation) to the address listed above, even if I have already provided the information to Plaintiffs' or Defendants' counsel in this matter.

(6)   Finally, I understand that if I do not timely and properly submit this form to the address

24

**JOINT STIPULATION OF SETTLEMENT AND RELEASE – 3:09-CV-00385-BES-(VPC)**

listed above, I will not participate in the settlement of this matter and will not be entitled to receive any portion of the settlement amount to be paid pursuant to the Joint Stipulation of Settlement and that the portion of the settlement amount that I would have received (if I elected to participate) will not be set aside for me.

Executed on _____, 2011, at _____ (City, State).

I declare under penalty of perjury that the foregoing and the information provided below is true and correct.


_____
(Signature)

_____
(Address)

_____
(Social Security Number)

_____
(Typed or Printed Name)

(____)_____-_____
(Telephone Number, Including Area Code)

**JOINT STIPULATION OF SETTLEMENT AND RELEASE – 3:09-CV-00385-BES-(VPC)**

1
2
3
4
5
6
7
8
9
10
11
12
13

**EXHIBIT "2"**

14

KURT KNUDSEN, DONALD CAPP,
LARRY MOON, STEVE VOLKERT, and

15

PAUL DYER on behalf of themselves, and
all others similarly situated,

16

Plaintiffs,

17

vs.

18

QUEENSTAKE RESOURCE U.S.A. INC.,
YUKON-NEVADA GOLD CORP.,

19

collectively aka Yukon-Nevada/Queenstake

20

USA, Graham Dickson, and Shaun Heinrichs,

21

Defendants.

Case No.: 3:09-CV-00385-BES-(VPC)

**[PROPOSED] NOTICE OF SETTLEMENT**

Date:
Time:
Ctrm:
Judge:

## NOTICE OF PROPOSED SETTLEMENT
## OF CLASS ACTION

22
23

TO:      All current and former employees of Defendant Queenstake Resource U.S.A., Inc.,

24

and Yukon-Nevada Gold Corporation (hereinafter "Queenstake") who fall into one or more of the
following Classes ("hereinafter Class Members"):

25

The 401K Class:  All Queenstake employees and/or former employees from whose

26

paychecks Queenstake withheld intended 401K contributions in or about August 2008, but

27

which contributions were not deposited in the employees' and/or former employees'
respective 401K accounts.

28

26

**JOINT STIPULATION OF SETTLEMENT AND RELEASE – 3:09-CV-00385-BES-(VPC)**

The Medical Claims Class:  All Queenstake employees and/or former employees who submitted medical claims during the period starting ninety (90) days prior to August 8, 2008 and continuing for sixty (60) days after August 8, 2008 (or between May 9, 2008 and October 7, 2008), and whose claims have not been paid by Queenstake.

The WARN/Contract Class:  All employees who were terminated by Queenstake on or about August 8, 2008 or within thirty (30) days thereafter or before and who have received pay for only thirty (30) days after their employment termination.  The term "WARN/Contract Class Member" shall refer to any and all members of the WARN/Contract Class.

## IMPORTANT - PLEASE READ THIS NOTICE CAREFULLY

You have been provided with the attached Claim Form to indicate whether you want to participate in the Settlement.

**If you wish to:**

I.    **Receive your share of the Settlement**, you must **COMPLETE AND RETURN YOUR CLAIM FORM NOT LATER THAN [60 DAYS AFTER MAILING THIS NOTICE].**

II.    **If you do NOT intent to participate in the Settlement**, you may either **SEND A WRITTEN REQUEST TO BE EXCLUDED ON OR BEFORE [30 DAYS AFTER MAILING THIS NOTICE] or do nothing.**  (Please see Section IV(2) below for more detail).

III.    **Object to the Settlement, you must do so in writing** at any time before or at the hearing for final approval of the Settlement.

**IF YOU DO NOT RESPOND TO THIS NOTICE** (by declining to fill out the attached Claim Form or submitting a written request to be excluded from the Settlement)—**YOU WILL NOT BE OPTING INTO PARTICIPATING IN THE SETTLEMENT AND YOUR SHARE WILL NOT BE SET ASIDE FOR YOU.**

I.    **WHAT IS THIS CLASS ACTION ABOUT?**

On July 17, 2009, Plaintiffs Kurt Knudsen, Donald Capp, Larry Moon, Steve Volker, and Paul Dyer, commenced the above-captioned Action in the United States District Court for the District of Nevada.  In the Action, Plaintiffs, on behalf of themselves and all others similarly situated, alleged the following causes of action:

a.    Breach of contract—Plaintiffs alleged that Defendants breached their contract to the Class for failing to pay sixty (60) days of severance compensation that was promised to the Class in consideration for not filing legal action against Defendants.

b.    Violation of the federal Worker Adjustment and Retraining Notification Act (WARN) (29 U.S.C. § 2104(a)(5))—Plaintiffs alleged that Defendants violated the WARN Act for failing to provide the Class with sixty (60) days advance notice of the mass layoff and/or failing to provide sixty (60) days of compensation as a result of the layoff.

c.    Violation of the Employee Retirement Income Security Act ("ERISA") (29 U.S.C. § 1132)—Plaintiffs alleged that Defendants violated ERISA for failing to pay medical benefits and transmit medical insurance payments to the appropriate third

27

party medical insurance carrier, and for failing to transmit to the appropriate third party administrator 401K pension monies that were deducted from Class Members' paychecks.

    d.   Lien on the properties where the Classes previously performed work.

Plaintiffs believe that the Action is meritorious and that the Action is appropriate for class-action treatment.  Defendants deny any liability or wrongdoing of any kind for alleged breach of contract, WARN, and ERISA violations, and contend that, for any purpose other than settlement, the Action is not appropriate for class action treatment pursuant to Federal Rule of Civil Procedure Rule 23 or any other rule of Court applicable to the Action.  On November 8, 2010, the Parties reached a binding agreement to settle the Action on the terms set forth below.

## II.   **WHO IS INCLUDED IN THIS CLASS ACTION?**

The Court has ordered this Lawsuit to proceed as a class action for settlement purposes only.  The Class consists of all current and former Queenstake employees who fall within one or more of the three classes set forth above—i.e., The 401K Class, The Medical Claims Class, The WARN/Contract Class.

## III.   **WHAT DOES THE PROPOSED SETTLEMENT OFFER?**

If this Settlement is given final approval by the Court, under the proposed settlement Queenstake will include the following:

    1.   <u>Severance.</u>  Defendants will pay the full net amount of severance for thirty (30) more days as has previously been already paid to employees, which amounts to $1,210,431.46 remaining to be paid.  Any unclaimed amounts will revert to Queenstake.

    2.   <u>Medical Claims.</u> Defendants will deposit $1.6 million with the Claims Administrator to cover outstanding medical claims.  The $1.6 million will be used to reimburse employees in full (minus applicable deductibles and/or co-pays) for any medical claims submitted during the period spanning between ninety (90) days before August 8, 2008 and sixty (60) days thereafter (or between May 9, 2008 and October 7, 2008), which employees have already paid.  This applies to any partial payments (minus applicable deductibles and/or co-pays) that employees may have made, even though the claims have not been paid in full.  With respect to claims submitted between May 9, 2008 and October 7, 2008, which are still fully outstanding and have not been paid, the Claims Administrator will attempt to negotiate a satisfaction of these claims at a discount.  If the Claims Administrator is able to negotiate a discount which, in his or her discretion, is reasonable, the Claims Administrator shall pay the discounted amount (minus applicable deductibles and/or co-pays) and resolve the claims.  Any medical claims that still remain outstanding (minus applicable deductibles and/or co-pays) will be paid from the balance left after full reimbursement of the claims (or parts thereof) that employees have already covered and payment of the negotiated discounted claims.  If the amount of the claims outstanding after such payments have been made exceeds the balance left from the $1.6 million, the remaining unpaid claims will be paid on a pro-rata basis from the available remaining amount from the fund.  The $1.6 million deposit is reversionary, and any unused amounts will be remitted to Defendants.
    With respect to the claims that have been assigned to Northeastern Nevada Regional Hospital ("NNRH") and were litigated by the hospital, these claims were handled outside the $1.6 million to be deposited with the Claims Administrator to cover outstanding medical claims.  Defendants settled the NNRH claims separately from the $1.6 million fund and obtained a release to avoid potential future demands against employees in connection with these claims.

    3.   <u>401K Benefits.</u>  Defendants will pay a total of $75,000.00, which will fully cover and exceed the amount owed with respect to 401K deductions made.  The $75,000.00 amount

28

will distribute the respective amounts to the 401K Class Members pro rata by the amount of money deducted from paychecks that was not properly transmitted to the employee's individual 401K accounts. The parties estimate that out of the total amount of $75,000.00, $69,025.85 will be allocated to cover actual unpaid 401K contributions withheld from employee paychecks. The remaining $5,974.15 will be paid to the 401K Class Members, in proportion to the 401K amount that these will receive.

    4.    <u>Enhancements for Class Representatives.</u>  Defendants will pay each Plaintiff $20,000.00 as enhancements.

    5.    <u>Claims Administrator Costs.</u>  The reasonable costs of the Claims Administrator and any costs and expenses that the Claims Administrator incurs in sending proper class notices and administration of the settlement will be deducted from the $1.6 million medical claims fund.

    6.    <u>Attorney's Fees and Expenses.</u>  Defendants agree to pay Class Counsel $780,000.00 in attorney's fees and costs.

## IV.    <u>WHAT ARE MY OPTIONS?</u>

If you are a Class Member and do not object to this Settlement, you have two (2) options. You may either:

    1.    **Participate in the Settlement**, in which case you **WILL** receive your portion of the Settlement amount and will be bound by the Settlement. If you choose this option, you must COMPLETE AND RETURN YOUR CLAIM FORM NOT LATER THAN [60 DAYS AFTER MAILING THIS NOTICE].

    2.    **Exclude yourself from the Settlement**, in which case you **WILL NOT** receive your portion of the Settlement Amount and will not be bound by the Settlement. Your portion will not be set aside for you. If you choose this option, you may either submit a written request to be excluded ON OR BEFORE [30 DAYS AFTER MAILING THIS NOTICE] or do nothing. If you choose to be excluded from the Settlement Class you will not be entitled to any recovery from the settlement and will not be bound by the Settlement or have any right to object, appeal or comment thereon. If you choose to be excluded you may do so by submitting a written request to the Claims Administrator, [insert name and address of Claims Administrator] no later than _____, 2011 or do nothing. **The written request to be excluded must include the Class Member's name, address, telephone number and the last four digits of his/her Social Security number, the dates of his or her employment with Defendant, and a specific request to be excluded from the Settlement.**

Regardless of which option you choose, neither Queenstake nor Plaintiffs will retaliate against you.

## V.    <u>HEARING ON PROPOSED SETTLEMENT</u>

A fairness hearing (the "Hearing") will be held before the Honorable Robert C. Jones on _____, 2011, at _____, in the , to determine whether the proposed settlement is fair, reasonable and adequate and should be finally approved by the Court, and whether a Judgment, as provided in the Settlement, should be entered. The Court may adjourn or continue the Hearing without further notice to Class Members.

## VI.    <u>PROCEDURES FOR OBJECTING TO SETTLEMENT</u>

Any Class Member may appear at the Hearing and show cause, if he or she has any reason why the proposed settlement should not be approved as fair, reasonable and adequate, and why a

29

Judgment should or should not be entered; provided, however, that no Class Member or any other person shall be heard or entitled to contest the approval of the terms and conditions of the proposed settlement, or, if approved, the Judgment to be entered thereon approving the same, unless on or before _____, 2011, that person has served by hand or by first class mail written objections and copies of any papers and briefs in support of their position and verification of their membership in the Class addressed to: Mark R. Thierman, Esq., Thierman Law Firm, 7287 Lakeside Drive, Reno, Nevada 89511, and, Anthony L. Hall, HOLLAND & HART, 5441 Kietzke Lane, Second Floor, Reno, Nevada 89511, and also filed said objections, papers and briefs with the Clerk of the Court, located at 400 S. Virginia Street, Reno, Nevada, 89501 (hereinafter "Court Clerk"). In order to be valid, these papers must be filed with the Court Clerk at the above address and served on all of the above counsel by the date set forth above.

Any Class Member who does not make their objection in the manner provided for in this Notice shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to or appeal the fairness, reasonableness or adequacy of the settlement.

## VIII.   FINAL JUDGMENT AND RELEASES TO BE ENTERED

If the proposed settlement is finally approved by the Court, a Judgment will be entered by the Court which will dismiss with prejudice this Class Action as against Defendants. The Judgment will resolve and release the claims raised in this Class Action to the extent provided in the Settlement and permanently bar all Settlement Class Members from prosecuting any and all Released Claims against Defendant and Released Parties.

## IX.   EXAMINATION OF COURT PAPERS AND INQUIRIES

The above description is a summary of the Settlement. For more detailed information you may inspect the Court files at the Office of the Court Clerk, located at 400 S. Virginia Street, Reno, Nevada, 89501, during the business hours of each business day. Inquiries regarding the class action should be directed to Mark R. Thierman, Esq., Thierman Law Firm, 7287 Lakeside Drive, Reno, Nevada 89511.

**PLEASE DO NOT CALL THE COURT OR THE CLERK**
**OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA**
**REGARDING THIS CLASS ACTION**

Dated:_____          _____
                                         Honorable Robert C. Jones
                                         United States District Court Judge

5035600_5.DOC

30

**JOINT STIPULATION OF SETTLEMENT AND RELEASE – 3:09-CV-00385-BES-(VPC)**